IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

MELODY R. ADAMS,

        Plaintiff,

  v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

        Defendant.
_____/

No. C 10-2008 DMR

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

      Plaintiff Melody Adams applied for Supplemental Security Income disability benefits. Defendant Social Security Commissioner ("Commissioner") denied her application after determining that Adams was not disabled within the meaning of the Social Security Act, 42 U.S.C. § 1382c(a)(3)(A). Adams now seeks judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). Both parties filed motions for summary judgment. For the reasons stated below, Adams' motion is GRANTED and the Commissioner's cross-motion is DENIED. The Court remands this case for further proceedings consistent with this Order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

      Adams filed an application for Social Security Income disability payments in October 2007. (Administrative Record ("AR") 13.) Her claim initially was denied in March 2008 and again

denied upon reconsideration in July 2008. *Id.* Adams subsequently requested a hearing, which was held in October 2009 before Administrative Law Judge ("ALJ") Michael Blume and at which vocational expert ("VE") Jeff Clark testified. *Id.*

In his written decision, the ALJ applied the five-step sequential evaluation process promulgated by the Social Security Administration ("SSA") to determine whether Adams was disabled. (AR 14-28.) If at any step the ALJ determines the claimant is or is not disabled, the evaluation does not go on to the next step. 20 C.F.R. § 416.920(a)(4). The evaluation process includes an assessment of a claimant's residual functional capacity ("RFC"), which is "the most [a claimant] can still do" despite physical and mental limitations caused by her impairments. 20 C.F.R. § 416.945. At step five, the ALJ determines whether the claimant is able to do any other work considering her RFC, age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v). Should the ALJ decide that the claimant is not disabled, "the [SSA] is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [her RFC] and vocational factors." 20 C.F.R. § 416.960(c)(2).

Social Security Ruling ("SSR") 00-4p governs the use of occupational evidence.[1] At step five of the sequential evaluation, ALJs rely on the Dictionary of Occupational Titles ("DOT") and testimony from vocational experts in making disability determinations. SSR 00-4p, 2000 WL 1898704 at *2. The DOT is a reference guide in the form of a job catalog that contains standardized occupational information about each job. An ALJ is to "rely primarily on the DOT . . . for information about the requirements of work in the national economy." *Id*. An ALJ may also call upon a VE to provide occupational evidence through testimony at a disability benefits hearing. *Id.* As part of a disability determination, an ALJ must address any conflicts between the VE's testimony and information contained in the DOT. *Id*. at *1. The ALJ has an "affirmative responsibility to ask about any possible conflict between [the VE's testimony about the requirements of a job] and information provided in the DOT . . ." *Id.* at *4.

---

[1] SSRs "are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Massachi v. Astrue*, 486 F.3d 1149, 1152, n.6 (9th Cir. 2006) (citations omitted). In *Massachi*, the Ninth Circuit held that an ALJ must comply with SSR 00-4p before relying on the testimony of a vocational expert. *Id.* at 1150.

2

The DOT provides specific information about each job, including General Education Development ("GED") and Specific Vocational Preparation ("SVP") scores. The GED score includes a reasoning development level score, which "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." DOT, Appendix C. The scale of reasoning development levels is 1 to 6, with 6 being the most advanced level. *Id.* An SVP score measures the amount of time it takes a worker to learn the skills necessary to perform a job. *Id.* The range of SVP scores is 1 to 9, with a score of 9 taking the longest time to learn. *Id.*

The key dispute in this case involves the ALJ's determination that Plaintiff's RFC restricted her to the ability to "understand, remember, and carry out simple instructions with limited contact with the general public." (AR 19.) In soliciting the VE's testimony at the hearing, the ALJ posed this slightly differently, describing Plaintiff's RFC as "some psychiatric limitations of slight to moderate nature [] that would not preclude simple, repetitive tasks with limited public interaction."[2] (AR 61.) The ALJ accepted the testimony of VE Clark, who testified that a hypothetical person with a limitation to "simple, repetitive tasks with limited public interaction" could perform work as a surveillance systems monitor. (AR 61-62.) As a result, the ALJ determined Adams could perform "work that exists in significant numbers in the national economy" and was not disabled and therefore denied her application for disability benefits. (AR 28.)

Plaintiff now argues that the requirements of the surveillance systems monitor job, as described in the DOT, conflicts with the ALJ's determination of Plaintiff's RFC. Plaintiff asserts that since the VE and ALJ did not address this conflict, the Commissioner's decision should be reversed with an award of benefits, or in the alternative, the Court should order a remand for further proceedings. The Commissioner argues that no conflict exists, and that the Commissioner's decision should be affirmed. It is undisputed that the ALJ did not ask the VE whether his testimony

---

[2] Thus, the RFC posed to the VE at the hearing (limitation of "simple, repetitive tasks") differs from the RFC described in the ALJ's written decision (limitation of "simple instructions"). As addressed below, the VE's testimony regarding a particular job created an unexplained conflict with the ALJ's formulation of the claimant's RFC at the hearing, which results in a remand. Therefore, the Court need not analyze the conflict between the VE's information and the ALJ's formulation of claimant's RFC as stated in the *decision*.

regarding the job of surveillance systems monitor conflicted with the information in the DOT. Docket No. 21 at 11; Docket No. 22 at 7.

## II. STANDARD OF REVIEW

A claimant may seek judicial review of the Commissioner's decision to deny her application for social security benefits. 42 U.S.C. § 405(g). A court has the power to set aside the denial of social security disability benefits "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). If the court decides that the evidence "can reasonably support either affirming or reversing the Commissioner's decision," it "may not substitute its judgment for that of the Commissioner." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).

## III. DISCUSSION

Plaintiff argues that the evidence does not support the ALJ's decision that she is able to perform the job of surveillance systems monitor because the information in the DOT conflicts with her stated RFC in two respects. First, Plaintiff argues that the ALJ's determination that her RFC limits her to jobs involving "simple, repetitive tasks" precludes her from performing a job that is described in the DOT as requiring a reasoning development level of 3. Second, Plaintiff argues that she cannot perform the job of surveillance systems monitor because it requires contact with people on a frequent basis, which conflicts with an RFC that limits her ability to have contact with the public. Docket No. 21 at 8. Adams also argues that the ALJ did not comply with governing authority because he failed to elicit an explanation from the VE or otherwise explain his conclusion that Plaintiff could work as a surveillance systems monitor despite these apparent conflicts. *Id.* at 11.

The Commissioner contends that there was no conflict because the VE identified an unskilled job that properly accounted for Adams' limitation to "simple work." Docket No. 22 at 5, 7. The Commissioner also argues that there is nothing in the DOT job description for surveillance systems monitor that requires the ability to remember or carry out detailed instructions, nor does the job require dealing with the general public. *Id.* at 5-6. Finally, the Commissioner argues there was

4

no conflict because Adams did not note a conflict during the hearing before the ALJ. *Id.* at 7. While conceding that the ALJ failed to ask the vocational expert if his testimony conflicted with the DOT, the Commissioner argues that "the error was harmless as there was no actual conflict." *Id.* at 7.

### A. Conflicts Between the Vocational Expert's Testimony and the DOT

"[A]n [ALJ] may [not] rely on the testimony of a vocational expert regarding the requirements of a particular job without first inquiring whether that expert's testimony conflicts with the [DOT]." *Massachi v. Astrue*, 486 F.3d 1149, 1150 (9th Cir. 2007). The obligation to ask about the existence of a conflict stems from SSR 00-4p, which requires an ALJ to identify and elicit an explanation for any conflict between a VE's testimony and the information in the DOT. *Id.* at 1152-1153. When there is a conflict, compliance with SSR 00-4p "ensure[s] that the record is clear as to why an ALJ relied on a vocational expert's testimony . . . ." *Id.* at 1153. To comply with SSR 00-4p, "the ALJ must first determine whether a conflict exists. If it does, the ALJ must then determine whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the [DOT]." *Id.* Failing to ask whether there is a conflict between the VE's testimony and the DOT is harmless error where there is no apparent conflict or where the VE explained the reason for the deviation. *Id.* at 1154, n.19. If the ALJ does not comply with SSR 00-4p, then a reviewing court "cannot determine whether substantial evidence supports the ALJ's step-five finding that [claimant] could perform other work." *Id.* at 1154.

#### 1. Conflict Regarding Reasoning Development Level

The ALJ accepted the VE's testimony that a person limited to "simple, repetitive tasks" could perform the job of surveillance systems monitor; the ALJ therefore concluded that Adams was not disabled. Adams argues that this limitation conflicts with the DOT's classification of the surveillance systems monitor job as requiring a reasoning development level of 3. The Commissioner argues that there is no conflict between the DOT job requirements and Plaintiff's RFC.

5

Although the Ninth Circuit has yet to directly address the question,[3] the majority of courts in this circuit have held that there is an apparent conflict when an ALJ determines that a person limited to simple, repetitive tasks can perform a job with a reasoning development level of 3.[4]

A review of the reasoning level associated with the job the VE identified supports the conclusion that there is an apparent conflict in this case. The VE testified at the hearing that a hypothetical person with Plaintiff's RFC could perform the job of surveillance systems monitor, which the DOT classifies as a reasoning development level 3 job. DOT 379.367-010. A level 3 reasoning development score assumes a person can "[a]pply commonsense understanding to carry out instructions furnished in written, oral or diagrammatic form [and] [d]eal with problems involving several concrete variables in or from standardized situations." DOT, Appendix C. On its face, the description of this reasoning development level seems inconsistent with an individual limited to simple, repetitive tasks. The ability to deal with problems involving multiple variables may be inconsistent with a limitation to "simple, repetitive tasks" because the multiplicity of the variables can complicate the simplicity of the tasks. Additionally, it may be difficult for a person limited to simple, repetitive tasks to follow instructions in "diagrammatic form" as such instructions can be abstract. There is no information in the record that resolves this conflict. Therefore, there

---

[3] There is a split among circuit courts on this question. *Compare Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (surveillance systems monitor job with a reasoning level of 3 per the DOT was incompatible with a claimant whose RFC limited her to "simple and routine work tasks") *with Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (claimant limited to "simple" work could perform the job of surveillance systems monitor, which had a reasoning level of 3) *and Renfrow v. Astrue*, 496 F.3d 918, 920-921 (8th Cir. 2007) (a claimant with an inability to do "complex technical work" was not precluded from jobs with a reasoning level of 3).

[4] *See Carney v. Astrue*, No. 09-1984-JEM, 2010 WL 5060488, *4-5 (C.D. Cal. Dec. 6, 2010) (jobs with a reasoning level of 3 are unsuitable for someone limited to "simple, repetitive tasks"); *Burns v. Astrue*, No. 09-1686-JEM, 2010 WL 4795562, *5-6 (C.D. Cal. Nov. 18, 2010) (same); *Wright v. Astrue*, No. 10-0400-SS, 2010 WL 4553441, *4-5 (C.D. Cal. Nov. 3, 2010) (same); *Torrez v. Astrue*, No. 09-00626-JLT, 2010 WL 2555847, *8-9 (E.D. Cal. Jun. 21, 2010) (same); *McGensy v. Astrue*, No. 09-152-AGR, 2010 WL 1875810, *3-4 (C.D. Cal. May 11, 2010) (same); *Pak v. Astrue*, No. 08-714-OP, 2009 WL 2151361, *7 (C.D. Cal. Jul. 14, 2009) (same); *and Tudino v. Barnhart*, No. 06-2487-BEN, 2008 WL 4161443, *11 (S.D. Cal. Sept. 5, 2008) (same). *But see Chinchiolo v. Comm'r of the Soc. Sec. Admin.*, No. 06-1653-CMK, 2008 WL 1970092, *14-15 (E.D. Cal. May 2, 2008) (a "slight limitation" in ability to do simple, repetitive tasks is not inconsistent with a reasoning development level 3 job) *and Gallo v. Comm'r of the Soc. Sec. Admin.*, No. 07-01561-MEJ, 2010 WL 545848, *21 (N.D. Cal. Feb. 12, 2010) (a person precluded from detailed instructions can perform a job with a reasoning development level of 3).

appears to be a conflict between the VE's testimony that a person limited to "simple, repetitive tasks" could perform a job with a level 3 reasoning level.

The Commissioner cites two cases to support his argument that there is no conflict. Neither is persuasive. In *Gallo v. Comm'r of the Soc. Sec. Admin.*, No. 07-01561-MEJ, 2010 WL 545848, *21 (N.D. Cal. Feb. 12, 2010), the court upheld an ALJ's determination that a claimant precluded from following detailed instructions could work as a credit checker, a job with a reasoning development level of 3. The court noted that the VE "*specifically* testified" about how the recommended job "would accommodate the ability to not be required to carry out detailed instructions." *Id.* (emphasis added; internal quotation marks and citations omitted). *Gallo* is distinguishable because in this case, the VE offered no specific testimony about how a person with Plaintiff's RFC could perform the job of surveillance systems monitor despite the conflict between her limitations and the stated reasoning level required for the job.

In the second case cited by the Commissioner, *Chinchiolo v. Comm'r of the Soc. Sec. Admin.*, No. 06-1653 CMK, 2008 WL 1970092, *14-15 (E.D. Cal. May 2, 2008), the court determined that a claimant's "slight limitation in ability to do simple, repetitive tasks" did not conflict with the identified jobs of storage facility rental clerk and cashier, both of which have a reasoning development level of 3. However, the court did not directly analyze the alleged conflict, instead noting that the claimant's conflict argument "rest[ed] on a misinterpretation of the ALJ's residual functional capacity finding." *Id.* at 14. The claimant had attempted to reframe a "slight" limitation to simple, repetitive work (meaning he "could mostly perform such tasks") as a "slight ability" to perform simple, repetitive tasks. *Id*. Here, Plaintiff has not misinterpreted the ALJ's RFC assessment. She is not basing her conflict argument on any limitations except those directly in the ALJ's RFC. Therefore, *Chinchiolo* does not provide guidance on whether a conflict exists between Adams' RFC and the VE's identification of a job with a reasoning level of 3.

The Commissioner also argues that SVP scores in the DOT job descriptions carry more weight than GED scores and should therefore be the deciding factor in the Court's analysis of whether there is a conflict in this case. The surveillance systems monitor job has an SVP score of 2,

7

which corresponds to unskilled work.[5] Essentially, the Commissioner's argument is that "unskilled work" is synonymous with a limitation to "simple instruction work" or "simple, repetitive tasks."

At least one court has directly addressed and rejected the Commissioner's argument. In *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 982 (C.D. Cal. 2005), the ALJ's RFC for a claimant included a limitation to "simple tasks performed at a routine pace." (internal citation and quotation marks omitted). In that case, the Commissioner argued there was no conflict between the jobs the ALJ determined the claimant could do and her RFC because one of the jobs had an SVP of 2, "which essentially is unskilled work." *Id.* The court dismissed this argument, noting that the Commissioner was "conflating two separate vocational considerations" because the SVP score "does not address whether a job entails only simple, repetitive tasks." *Id.* at 983. In a similar case, the court noted that "[a] job's simplicity level is more squarely addressed by GED reasoning [development] level ratings." *Carney v. Astrue*, No. 09-1984-JEM, 2010 WL 5060488, *4 (C.D. Cal. Dec. 6, 2010).

In sum, an apparent conflict was created when the VE testified that a person not precluded from simple, repetitive tasks could perform a job with a reasoning development level of 3. The ALJ did not inquire about this conflict, nor did the VE offer testimony that resolved the conflict.

### 2. Conflict Regarding Interaction With Others

Adams argues that another conflict exists because the DOT provides that the job of surveillance systems monitor necessitates "contact with people," which conflicts with the ALJ's RFC assessment for her that includes "limited contact with the general public." The Commissioner

---

[5] The Commissioner also points to Plaintiff's educational background -- high school and one year of college -- to argue she can perform a job with an SVP score of 2, which takes less than 30 days to learn. Assuming for the sake of argument that Plaintiff has the capacity to perform work at an SVP 2 level, the fact remains that the SVP score only measures the amount of time it takes to learn the skills of a job. It "does not address whether a job entails only simple, repetitive tasks." *Meissl v. Barnhart*, 403 F. Supp. 2d 981, 983 (C.D. Cal. 2005). Further, the Commissioner argues that Adams has not shown any diminishment of her "educational achievements" that would demonstrate that she is unable to perform unskilled work. However, in determining a claimant's RFC at step four of the sequential evaluation process, an ALJ takes into account the claimant's education level as well as any mental and physical limitations that would impact the kind of work the claimant could perform. In this case, the ALJ took Adams' "educational achievements," as well as any mental and physical limitations caused by her impairments, into account in determining her RFC.

8

contends that the DOT job description of surveillance systems monitor does not contain a requirement of having to deal with the general public.

In the section titled "Temperaments" in the surveillance systems monitor job description, the DOT lists "dealing with people" as part of the job. DOT 379.367-010. The DOT provides no further description or explanation of this ability. It does not describe which people (i.e., members of the public versus co-workers), nor does it describe how much contact (i.e., limited or frequent). It is possible that "dealing with people" includes dealing with the general public; if so, Adams' limitation on her interaction with the general public may conflict with the information provided in the DOT, depending on the amount of required interaction. There is nothing in the record to resolve this discrepancy. Therefore, the VE created an apparent conflict when he testified that a person with a limitation in her ability to interact with the general public could perform a job that the DOT indicated requires an unspecified frequency of contact with unspecified people.[6] Again, the ALJ did not inquire, nor did the VE explain the apparent conflict.

### B. The ALJ Erred By Not Inquiring Into Whether the VE's Testimony Conflicted With the DOT And By Not Providing An Explanation For the Deviation From the DOT

Adams argues that the ALJ failed to comply with SSR 00-4p and *Massachi* because he did not ask the VE whether his testimony was consistent with the DOT nor did he elicit or provide a reasonable explanation for the deviation. The Commissioner concedes that the ALJ failed to ask the VE whether his testimony conflicted with the DOT, but argues the error was harmless since there was no apparent conflict.

When a VE identifies a job whose DOT requirements exceed a claimant's abilities per the stated RFC, there is an apparent conflict and the ALJ has an obligation to elicit an explanation from

---

[6] The Commissioner points to the fact that Adams herself failed to bring up any conflict at the hearing as indicative of the nonexistence of an apparent conflict. Docket No. 22 at 7. However, SSR 00-4p is clear that the ALJ "has an *affirmative* responsibility to ask about any possible conflict." (emphasis added). *See also Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) ("[Claimant] was not required to raise [the conflict issue] at the hearing, because the Ruling places the burden of making the necessary inquiry on the ALJ.").

9

the VE for this deviation. *Massachi*, 486 F.3d at 1153.  "[I]n order for an ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation." *Pinto v. Massanari*, 249 F.3d 840, 847 (9th Cir. 2001).

As described above, the VE's testimony created an apparent conflict between Adams' RFC and the job description of surveillance systems monitor in the DOT.[7]  Because the ALJ failed to ask the VE whether his testimony conflicted with the information in the DOT, the VE did not address the conflict created by his identification of a job that the DOT describes as requiring a capacity beyond that of a person with Plaintiff's RFC.  Additionally, the ALJ's decision does not include any explanation for why he concluded that Plaintiff could perform a job that appears to be beyond the RFC he determined for her.

To summarize, an apparent conflict was created when the VE testified that a person limited to simple, repetitive tasks with limited public contact could perform a job that the DOT classified with a reasoning level of 3 and that requires dealing with people.  When the ALJ relied on the VE's testimony to determine that Plaintiff was not disabled, he deviated from the information contained in the DOT.  The ALJ did not ask the VE if his testimony was consistent with the DOT and the VE provided no explanation for this deviation.

### C.     Remand for Further Proceedings

It is within the court's discretion to either to remand a case for further administrative proceedings or to award benefits. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). Remand is warranted where additional administrative proceedings could remedy defects in the decision. *See, e.g., Kail v. Heckler*, 722 F.2d 1496, 1497 (9th Cir. 1984).  On the other hand, a court may forgo a remand where "further proceedings [are] unnecessary if the record is fully developed

---

[7] The Commissioner's argument that there is no conflict here because the VE's testimony about the job of surveillance systems monitor did not deviate from what is contained in the DOT about that job is not on point. Adams is not arguing that the VE provided information that deviated from what is contained in the DOT about the surveillance systems monitor job; Plaintiff argues that the VE created a conflict when he identified a job that appears to be beyond the capacity of her RFC as determined by the ALJ.  In order words, her focus is not on what is included in the DOT description of the surveillance systems monitor job, but on how to reconcile that information with her RFC as determined by the ALJ.

1  and it is clear from the record that the ALJ would be required to award benefits." *Holohan v.*
2  *Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001).

3  In this case, remand to the SSA is appropriate. On remand, the ALJ shall comply with SSR
4  00-4p. Remand to the SSA is particularly appropriate because a "court [should] not substitute its
5  opinion for the ALJ's who is in a better position to gauge credibility and resolve conflicts in
6  evidence." *Jordan v. Astrue*, No. 09-1559-MMA, 2010 WL 2816234, *5 (N.D. Cal. May 4, 2010)
7  (internal quotation marks and citation omitted).

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is GRANTED and Defendant's Cross-Motion for Summary Judgment is DENIED. This case is remanded for further proceedings consistent with this order.

IT IS SO ORDERED.

Dated: May 13, 2011

DONNA M. RYU
UNITED STATES MAGISTRATE JUDGE

